# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**

* * * * * * * * * * * * * * * * * * * *
| | |
|---|---|
| JESSICA ROBERTS, * | |
| * | No. 16-1030V |
| Petitioner, * | Special Master Christian J. Moran |
| * | |
| v. * | |
| * | Filed: July 9, 2018 |
| SECRETARY OF HEALTH * | |
| AND HUMAN SERVICES, * | Attorneys' fees and costs, |
| * | Reasonable basis |
| Respondent. * | |

* * * * * * * * * * * * * * * * * * * *

<u>Randall Knutson</u>, Knutson & Casey Law Firm, Mankato, MN, for petitioner;
<u>Lara Englund</u>, United States Dep't of Justice, Washington, DC, for respondent.

**PUBLISHED DECISION DENYING PETITIONER'S
MOTION FOR ATTORNEYS' FEES AND COSTS[1]**

On January 16, 2018, the undersigned issued a decision dismissing Ms. Roberts' petition. Ms. Roberts subsequently filed a timely motion for attorneys' fees and costs, requesting $29,548.50, on March 13, 2018.

For the reasons set forth below, the undersigned finds that petitioner did not have a reasonable basis to bring her petition. Thus, petitioner is ineligible for an award of attorneys' fees and costs.

## I.    Brief Factual and Procedural History

Ms. Roberts claimed that as the result of hepatitis B and tetanus-diphtheria-acellular pertussis vaccines she was administered on August 22, 2013, she suffered

---

[1] The E-Government Act, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services), requires that the Court post this decision on its website. Pursuant to Vaccine Rule 18(b), the parties have 14 days to file a motion proposing redaction of medical information or other information described in 42 U.S.C. § 300aa-12(d)(4). Any redactions ordered by the special master will appear in the document posted on the website.

"left-sided numbness, [paresthesia], and weakness, demyelinating disease, as well as non-epileptic seizures." Pet. ¶ 15. In an affidavit, she averred that the course of these effects began with pain all over her body for two weeks following her vaccinations. Exhibit 2. This also corresponded with the onset of "left-sided hand, finger and upper extremity numbness and heaviness." Id.

The medical and employment records painted a different picture of Ms. Roberts' health following the vaccination. Ms. Roberts saw a gynecologist two weeks following the vaccination for a routine visit and did not report any body pain. Exhibit 4 at 6.[2] In the months following that visit, Ms. Roberts visited several other healthcare practitioners—including an ENT, an audiologist, another ENT, an orthopedist, and an allergist—all without complaints of the symptoms she associates with the vaccine. Exhibit 4 at 5-32.

It was not until January 9, 2014, that petitioner noted that she had had body aches following the August 22, 2013 vaccination. Exhibit 4 at 33. At this visit, Ms. Roberts did not make any report of other symptoms that form part of her claim (e.g., numbness and weakness in her extremities).

The first report of peripheral numbness in the record occurred on March 25, 2014. Exhibit 4 at 38-39. The record states that Ms. Roberts first noted these symptoms only the day before. Id. The physician considered thoracic outlet syndrome and asked Ms. Roberts to return for a follow-up. Id. At the follow-up appointment, Ms. Roberts reported a 40% improvement and it was recommended that she not return to work for another week. Id. at 41.

The months and years subsequent include a number of visits to health care professionals with a myriad of complaints. These include leg and arm paresthesia, abnormal sensations, fatigue, spells of pain and confusion. The reported timing of when the symptoms started changed from visit to visit. During an October 2014 visit she reported that they started after the vaccinations, and in a January 2015 visit she reported that she believed that the "mercury in the vaccine caused the pain." Exhibit 5 at 7; exhibit 4 at 83.

---

[2] While patients may not always report non-pertinent concerns to specialists, this was a routine visit where the physician collected a comprehensive patient history and performed a detailed examination. Consistent with this, Ms. Roberts did report to the gynecologist that a pre-vaccination ear problem was getting worse and that she was "noticing an ear problem with decreased hearing." Exhibit 4 at 6-8. However, no mention of whole body pain was made at this visit.

2

However, in a visit with a neurologist in July 2015, she stated that the sweeping body pain began in June 2013, two to three months before the vaccination. Exhibit 6 at 1. The notes from that visit also indicate that in August 2013, the pain returned, but much worse. Id. In a November 2015 appointment she reported that the symptoms began in April 2013, when her "brain felt wavy" and she had "ripping pain" throughout the entire body. Exhibit 7 at 1. The notes from that visit also record the worsening of symptoms in August 2013, and the observation that the tingling in the arms did not begin until January 2014. Id.

Petitioner's medical records indicate that among the many specialists she visited with various complaints in the years leading up to the filing of her petition, there were few to no answers regarding what was wrong with her. Physician after physician was unable to identify any objective indicia of her suffering a non-psychological condition and her doctors often associated her symptoms with stress and anxiety. E.g., exhibit 5 at 7; exhibit 7 at 9-10, 11-12; exhibit 8 at 77, 108.

Ms. Roberts filed her petition claiming a vaccine injury on August 19, 2016, shortly before the statutory deadline. As noted before, petitioner claimed that she suffered from "left sided numbness, [paresthesia], and weakness, demyelinating disease, as well as non-epileptic seizures." Pet. ¶ 15. As is evident from the review of the medical records, above, at the time of the filing of the petition, Ms. Robert's medical records were inconsistent with many of the claims found in her petition.

Respondent filed his Rule 4(c) Report on December 15, 2016. In his report, the respondent argued that petitioner was not entitled to compensation because "there is nothing in the record offering a medical theory causally connecting the vaccines to her symptoms and none of her treating doctors attributed her condition to the vaccines." Resp't's Rep. at 10. Relatedly, the respondent noted that the records filed in the case do not support the claim of causation since petitioner's claimed symptoms are not reported until months after the vaccination and even then the timeline is largely inconsistent. Id. at 11. Respondent also challenged petitioner's entitlement to compensation for the lack of evidence in the medical records supporting the conclusion that petitioner suffered a cognizable injury. Id. Respondent noted the extensive work-ups and diagnostic tests that the petitioner received without a non-psychological diagnosis being rendered. Id.

A Rule 5 status conference was held on January 3, 2017, to discuss respondent's report. During the status conference, the undersigned suggested that petitioner file employment records, which might be able to substantiate her claims of a vaccine injury. See order, issued Jan. 4, 2017.

3

On March 6, 2017, petitioner filed a status report stating that "she does not have any employment records that document the symptoms she was experiencing." In that status report, petitioner also requested additional time to consult with a neurologist. Petitioner's request was granted. See order, issued Mar. 6, 2017.

On April 4, 2017, petitioner filed another status report stating that "her neurologist was unable or unwilling to relate her neuropathy, paresthesia, and symptoms to any particular cause, including [the vaccination]." Petitioner requested additional time to "locate and hire an expert to address the issue of causation." Petitioner's request was granted. See order, issued Apr. 5, 2017. Petitioner was ordered to file her employment records and also provide an update on her search for an expert in two months' time. Id.

On June 1, 2017, petitioner filed a status report and her employment records. The status report stated that she had been unable to obtain an expert opinion that related her injuries to the vaccination. Petitioner's employment records were similarly unhelpful in establishing a connection between the vaccination and the claimed injury. They show that she applied for a position at Hometown Senior Living as a nurse's assistant on October 6, 2013, about a month and a half after the vaccination. Exhibit 17 at 30. They also show that she worked, part-time, relatively continuously from her start date in the beginning of November through early 2014. Exhibit 17 at 43-44. In her status report, petitioner requested 30 days "to review her options in the program, and make a decision on how to proceed." Petitioner's request was granted. See order, issued June 2, 2017.

On July 3, 2017, petitioner stated in a status report that she was having further testing done and requested 30 additional days to "undergo the testing, receive the results and determine how she wishes to proceed in the program." Petitioner's request for additional time was granted. See order, issued July 3, 2017.

On August 2, 2017, petitioner filed a status report stating that she "underwent surgery for an unrelated medical issue and this has delayed her medical treatment." Petitioner requested 45 additional days to receive the results of her testing and determine how she wishes to proceed in the program. Petitioner's request was granted, though she was encouraged to meet this upcoming deadline. See order, issued Aug. 4, 2017.

On September 13, 2017, petitioner filed a status report stating that her skin biopsy resulted in a diagnosis of small fiber neuropathy. Petitioner stated that it was unclear if her treating physicians attributed the small fiber neuropathy to the vaccination, but she requested time to request their opinions in writing.

4

A status conference was held on September 26, 2017, to discuss the petitioner's next steps. See order, issued Sep. 28, 2017. During the status conference, the petitioner stated that she would attempt to solicit an opinion from her treating physician and that if the physician was unable to provide an opinion supporting her claim of causation, petitioner was likely to conclude the case. Id.

On November 27, 2017, petitioner filed a status report stating that "petitioner's counsel had requested a preliminary expert opinion" and that it was "not favorable to petitioner." Petitioner stated that she intended to move to dismiss the petition.

On January 5, 2018, petitioner moved to have her case dismissed. The case was dismissed on January 16, 2018. Decision, 2018 WL 1023162.

On March 13, 2018, petitioner brought the present motion for attorneys' fees and costs. Two days later respondent provided his response. In his response, respondent "defer[red] to the undersigned's discretion to determine whether the statutory requirements for an award of attorneys' fees and costs are met in this case, including whether there was a reasonable basis for the petition when filed." Resp't's Resp. at 2. Respondent implicitly questioned petitioner's reasonable basis by pointing out that "petitioner did not establish that she suffered a particular injury, none of petitioner's treating doctors attributed her condition to her vaccinations, and petitioner did not show a proximate temporal relationship between the vaccinations and the onset of her symptoms (which she did not report to her doctors until more than four months after vaccination)." Id.

Petitioner did not file a reply within the time provided. Petitioner's motion is now ripe for adjudication.

## II.     Standards for Adjudication

Even when a petitioner in the Vaccine Program does not prevail on his or her claim and does not receive compensation, a special master "may" award reasonable attorneys' fees and other costs if "the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." 42 U.S.C. § 300aa-15(e)(1).

As the Federal Circuit has stated, "good faith" and "reasonable basis" are two separate elements that must be met for a petitioner to be eligible for attorneys' fees and costs. Simmons v. Sec'y of Health & Human Servs., 875 F.3d 632, 635 (Fed. Cir. 2017).

"Good faith" is a subjective standard. Id.; Hamrick v. Sec'y of Health & Human Servs., No. 99-683V, 2007 WL 4793152, at *3 (Fed. Cl. Spec. Mstr. Nov. 19, 2007). A petitioner acts in "good faith" if he or she honestly believes that a vaccine injury occurred. Turner v. Sec'y of Health & Human Servs., No. 99-544V, 2007 WL 4410030, at * 5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). The Secretary has not challenged petitioner's good faith here, and the undersigned has little doubt that petitioner brought the claim with an honest belief that a vaccine injury occurred. For that reason, the petition's reasonable basis is the focus of this decision.

In contrast to good faith, reasonable basis is purely an objective evaluation of the weight of the evidence. Simmons, 875 at 636. Because evidence is "objective," the Federal Circuit's description is consistent with viewing the reasonable basis standard as creating a test that petitioners meet by submitting evidence. See Chuisano v. Sec'y of Health & Human Servs., No. 07-452V, 2013 WL 6234660 at *12-13 (Fed. Cl. Spec. Mstr. Oct. 25, 2013) (explaining that reasonable basis is met with evidence), mot. for rev. denied, 116 Fed. Cl. 276 (2014). However, a looming statute of limitations, as was the case here, shall not be considered in determining whether reasonable basis for the petition existed. Simmons, 875 F.3d at 636.

The Federal Circuit and judges of the Court of Federal Claims have provided some guidance as to what reasonable basis is *not*. A petition based purely on "unsupported speculation," even speculation by a medical expert, is not sufficient to find a reasonable basis. Perreira v. Sec'y of Dep't of Health & Human Servs., 33 F.3d 1375, 1377 (Fed. Cir. 1994) ("Congress must not have intended that every claimant, whether being compensated or not under the Vaccine Act, collect attorney fees and costs by merely having an expert state an unsupported opinion that the vaccine was the cause in-fact of the injury"). As another example, when "the medical and other written records contradict the claims brought forth in the petition," a special master is not arbitrary in concluding that reasonable basis for the petition did not exist. Murphy v. Sec'y of Dep't of Health & Human Servs., 30 Fed. Cl. 60, 62 (1993), aff'd without opinion, 48 F.3d 1236 (Fed. Cir. 1995) (table).

Establishing the petition's reasonable basis in a motion for attorneys' fees and costs is the burden of the petitioner. Carter v. Sec'y of Health & Human Servs., 132 Fed. Cl. 372, 379 (2017) (citing Woods v. Sec'y of Health & Human Servs., 105 Fed. Cl. 148, 152 (2012) and McKellar v. Sec'y of Health & Human Servs., 101 Fed. Cl. 297, 305 (2011)).

## III.     Analysis

The objective evidence provides little basis for petitioner's claim. It appears that the only source of support is found in petitioner's own affidavit and in several medical records wherein the petitioner complained to a physician that a vaccination had injured her many months earlier.

This modicum of evidence is dwarfed by the substantial amount of evidence weighing against a finding of reasonable basis. This includes two medical records (exhibit 6 at 1 and exhibit 7 at 1) suggesting any problems existed before vaccination, the absence of evidence for her claimed injury, the absence of contemporary medical or employment records showing that she was adversely affected by the vaccination in the manner she claimed, the presence of contemporary medical records indicating that she was not adversely affected by the vaccination, and the lack of any medical opinion supporting a finding of causation from either a treating physician or an expert retained for the purpose of litigation.

The divide between petitioner's unsubstantiated averments and the contemporaneously created records undermines petitioner's claim that reasonable basis for the petition existed. See Murphy, 30 Fed. Cl. at 62. The lack of reasonable basis is accentuated by petitioner's failure to provide any opinion from a medical expert substantiating her claim that she suffered a vaccine injury. See Perreira, 33 F.3d at 1377 (noting that when the association between the vaccination and the injury is "mere speculation" as it was here, the statute does not envision reimbursement for petitioner's fees incurred in bringing the petition). The lack of a medical record or medical opinion weighs heavily against the finding of reasonable basis because "[t]he special master or court may not make ... a finding [of causation] based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion." 42 U.S.C. § 300aa–13(a)(1).

Finally, petitioner's affidavit cannot carry her burden to establish reasonable basis by itself for two reasons. First, if a petitioner's affidavit were sufficient to establish reasonable basis, then the reasonable basis standard would be effectively meaningless as every petitioner should be able to submit an affidavit. The Federal Circuit has indicated that the reasonable basis standard is not so toothless. See Perreira, 33 F.3d at 1377 (indicating that a special master may find reasonable basis lacking even when the petitioner presents a report from an expert). Second, the petitioner's affidavit can at best establish a temporal sequence in which the vaccination occurred before the petitioner experienced health problems. However, to establish reasonable basis, "Temporal proximity is necessary, but not sufficient." Chuisano v. Sec'y of Health & Human Servs., 116 Fed. Cl. 276, 287 (2014).

For the aforementioned reasons, the undersigned finds that an objective inquiry of the evidence indicates that there was not "a reasonable basis for the claim for which the petition was brought." 42 U.S.C. § 300aa-15. Because it is petitioner's burden to establish such a reasonable basis before an award of attorneys' fees and costs can be made, the undersigned finds that petitioner's motion for attorneys' fees and costs must be DENIED.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[3]

**IT IS SO ORDERED**.

S/ Christian J. Moran
Christian J. Moran
Special Master

---

[3] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party, either separately or jointly, filing a notice renouncing the right to seek review.